In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3728

DEBORAH DEAR,

*Plaintiff-Appellant*,

*v.*

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 07 C 2366—**Samuel Der-Yeghiayan**, *Judge.*

ARGUED MAY 27, 2009—DECIDED AUGUST 20, 2009

Before CUDAHY, RIPPLE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Deborah Dear has an impressive
resume. She has a bachelor's degree in nursing and a
master's degree in nursing administration. She has
served as a nursing instructor at the City Colleges of
Chicago and Triton College, and has even prepared com-
bat medical support personnel during Operation Iraqi
Freedom. Sometimes, however, good qualifications and
performance in one setting do not translate into suc-

cessful performance as a manager in another. In her most recent position as a Clinical Nurse Manager in the Emergency Department of the Hines Veterans Affairs Hospital, Dear clashed with her staff, physician colleagues, and supervisors over a variety of issues.

Dear's supervisors, Ruth Jennetten and Paula Steward, temporarily and then permanently reassigned Dear to lower-level staff nurse positions. They justified these actions on the basis of Dear's poor supervisory performance and failure to address the problems they had identified, but Dear believes that she was demoted because of her race. She filed this lawsuit against the Secretary of Veterans Affairs, bringing race discrimination, retaliation, and hostile work environment claims. The district court granted summary judgment in favor of the Secretary, and Dear now appeals. Because Dear has failed to put forth sufficient evidence to allow her claims to go forward, we affirm.

# I

In February 2004, the Hines Veterans Affairs ("VA") Hospital's Emergency Department ("the Department") hired Deborah Dear, an African-American woman, as a Clinical Nurse Manager. Up until 2006, Dear was performing adequately in this supervisory position, having received a promotion and generally positive job evaluations. In April 2006, Dear approached her direct supervisor, Ruth Jennetten, and asked if she could convert a certain part-time employee to full-time status. Jennetten explained that this particular employee was ineligible for

conversion. Soon thereafter, Dear asked Jennetten if she could fire the same employee, which struck Jennetten as odd. She decided to investigate.

What she found was a Department in revolt. Several Department staff members complained about Dear's supervisory deficiencies and threatened to walk off the job if Dear continued to be their supervisor. Jennetten personally witnessed Dear inappropriately discipline a member of the staff, and Paula Steward, Dear's second-level supervisor, also noted Dear's unusual denial of annual leave that had been requested by a staff member four to six months in advance. Perhaps as a result of this treatment, the staff and emergency room physicians rallied around the part-time employee who Dear wished to fire. Dear conceded in her deposition testimony that she had conflicts with various members of the Department, and she gave several examples. She noted that in January 2006, one Department physician, Bruce Guay, wrote an open letter singling her out for her lack of assistance during a crisis. Joe Volpe fought with Dear over her effort to change his existing schedule, which had been structured to allow him and his wife to be the sole caregivers of their child. Barbara Bollenberg, a Department nurse, directly sought Dear's removal.

In response to this, Steward requested that Dear compose a plan for improving the morale of the Department and submit it to Steward in one and a half weeks. Dear missed the deadline and eventually submitted a report that addressed only one of the problems Steward had identified. Believing that the situation was

potentially harmful to the patients, Jennetten sent Dear a memorandum on June 1, 2006, notifying her that she was being temporarily reassigned to a staff nurse position in the Telephone Care Program. Because this position did not have supervisory responsibilities, Dear suffered a two-step decrease in her salary.

Dear met with Jennetten and Steward the following day. They explained to her that the VA was taking this action because of her lack of supervisory skills, the numerous complaints in the Department about her, and her failure to come up with a plan to address the situation. At some point during the conversation, Jennetten also made the following remark, which Dear repeated in her deposition testimony:

> You need to change. I'm just—if I can just give you this advice, you can take it whichever way you want. You need to change your voice and you need to change your facial expressions.

After Dear's demotion, Gail Speer, a white nurse who was not as qualified as Dear for the post, replaced her on an interim basis.

On June 29, 2006, Dear contacted the EEO counselor within the VA's Office of Resolution Management. After an investigation, EEO counselor Thurman Story completed a report on July 12, 2006, in which he summarized interviews of Dear, Jennetten, and Steward. Two days later, Jennetten informed Dear that her temporary reassignment would end on August 6, 2006. Jennetten offered her three open, non-supervisory staff nurse positions for permanent reassignment. Dear responded nega-

tively in a memorandum dated July 18, 2006, that the three open positions would cause her hardship because of her family caregiving responsibilities; she requested alternatives that would allow her to keep her existing schedule. On that date, Dear also filed a formal administrative EEO complaint alleging racial discrimination for the temporary reassignment. Eight days later, Jennetten informed Dear that in light of her failure to select one of the three open positions, she was being permanently reassigned to a staff nurse position in the Resident Care Facility Unit. Dear then amended her EEO complaint to include additional claims of racial discrimination and retaliation for the permanent reassignment.

Dear eventually filed this lawsuit in April 2007, alleging racial discrimination, retaliation, and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. At the close of discovery, the Secretary moved for summary judgment, which the district court granted. Dear timely appealed.

## II

As a threshold matter, we must determine which of Dear's claims are before us. There is no question about Dear's race discrimination and retaliation claims, but the Secretary contends (and the district court found) that the hostile work environment claim is barred because it exceeds the scope of Dear's administrative complaint.

This court considers a theory raised in court to fall within the scope of an administrative complaint if it is rea-

sonably related to the charges actually set forth in the administrative filing. In other words, as we explained in a related setting, "the [administrative] charge and the [court] complaint must describe the same conduct and implicate the same individuals." *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005). That is the case here. Dear's hostile work environment claim implicates the same conduct (*e.g.*, Jennetten's comments to Dear, Dear's reassignments) and the same people (*e.g.*, Department staff and Dear's supervisors, Jennetten and Steward) as her other claims. As a result, it is properly before us.

### A

Dear's first contention is that the VA discriminated against her on the basis of her race when it demoted her to a staff nurse position. While her brief is not clear on whether she is pursuing the direct or indirect method of proof, at oral argument counsel for Dear clarified that this is an "indirect case." This is wise, as there is insufficient evidence to proceed on a direct theory. The only evidence that Dear describes as direct is Jennetten's remark to Dear that she needed to change her tone of voice and facial expressions; this statement, even if it was delivered in a snippy or condescending way, has no plausible connection to Dear's race. It could have been said to an employee of any race who was having trouble supervising staff, and there is plenty of evidence in the record that Dear was having difficulty in her relationships with the staff and physicians in the Department.

Under an indirect theory, Dear must put forward a *prima facie* case by establishing that (1) she is a member of a protected class; (2) her job performance met her employer's legitimate expectations; (3) she was subject to a materially adverse employment action; and (4) the employer treated similarly situated employees outside the protected class more favorably. *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005). Both sides accept that Dear is in a protected class on the basis of her race and that her reassignment to a staff nurse position with less pay was an adverse employment action. The parties dispute whether Dear was meeting legitimate expectations and whether she has identified a similarly situated employee.

When considering whether an employee is meeting an employer's legitimate expectations, this court looks to whether she was performing adequately at the time of the adverse employment action. *Hong v. Children's Memorial Hosp.*, 993 F.2d 1257, 1262 (7th Cir. 1993). Dear relies heavily on her credentials, work experience, and previous positive job evaluations as a Clinical Nurse Manager. While these indicators can be relevant to the question whether an employee is meeting legitimate expectations, they cannot "demonstrate the adequacy of performance at the crucial time when the employment action is taken." *Fortier v. Ameritech Mobile Communs.*, 161 F.3d 1106, 1112 (7th Cir. 1998). The record reveals that, at the time of the demotion, there were concrete reasons to think that Dear's supervisory performance was lacking, and Dear failed to comply with her own supervisor's order that she compose a plan to deal with the resulting low morale

in her department. We thus agree with the district court that Dear has failed to demonstrate that she was meeting the VA's legitimate expectations.

Even if she could show that she was performing at the required level, Dear would still have to point to a similarly situated employee who was directly comparable in all material respects. In deciding whether someone is comparable for this purpose, we consider all relevant factors, including whether the employee (1) held the same job description; (2) was subject to the same standards; (3) was subordinate to the same supervisor; and (4) had comparable experience, education, and other qualifications. *Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005).

While Dear does not clearly identify in her brief who she thinks is the best comparator, we see several possible candidates in this record. Dear cited Pat Reiman in her deposition and discussed Terri Michovich in an exhibit contained in her summary judgment documents. At oral argument, Dear's counsel pointed to Dear's interim replacement, Gail Speer, as the similarly situated employee. Unfortunately for Dear, none of these people passes the test. Reiman was a low-level clerical employee who had no supervisory responsibilities and thus was employed in a totally different capacity than Dear. Terri Michovich, a white Clinical Nurse Manager who had unsatisfactory performance evaluations, yet who did not suffer a demotion, might be a plausible candidate. But Dear cannot rely on her, because the record does not reveal enough about the nature of Michovich's unsatis-

factory performance or whether the VA requested that Michovich provide a plan for improvement and, if so, whether or not she complied. Finally, Dear has not provided any information about Speer's performance, and it is unlikely that an interim replacement could be considered similarly situated to a permanent employee. It is the plaintiff's burden to put forth evidence of employees outside of the protected class who might have been treated differently, but Dear has failed to do so. The district court was correct to grant summary judgment on Dear's race discrimination claim.

B

Dear also alleges that she suffered retaliation (in the form of her second reassignment) as a result of exploring EEO remedies. Under the indirect method of proof, Dear must show more or less the same four things that the race discrimination claim required. The only exception is that the first element calls on her to show that she engaged in a statutorily protected activity, and the last requires evidence that similarly situated employees who did not engage in that protected activity were treated more favorably. *Sitar v. Ind. DOT*, 344 F.3d 720, 728 (7th Cir. 2003). Both parties agree that Dear engaged in statutorily protected activity by seeking administrative remedies and that she suffered an adverse employment action. But, just as with her race discrimination claim, she has not introduced enough evidence to reach a jury on the questions whether she was performing her job satisfactorily and whether a similarly situated person

received better treatment. As a result, her retaliation claim also cannot withstand summary judgment.

C

To pursue a hostile work environment claim, Dear must prove (1) that her work environment was both objectively and subjectively offensive; (2) that the harassment was based on her membership in a protected class; (3) that the conduct was either severe or pervasive; and (4) that there is a basis for employer liability. *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1045 (7th Cir. 2002). Dear's best evidence for this claim boils down to Jennetten's statements to her as well as allegations that her problems in the Department derived from white staff, colleagues, and supervisors. Nor can Jennetten's statements to Dear be objectively construed as racist. Finally, Dear's contention that only white VA employees were causing her problems is not supported by the record. For example, Steward, Dear's second-level supervisor, is African-American. In light of the lack of evidence indicating that the work environment was hostile for African-Americans, the district court was correct to grant summary judgment on this claim as well.

\* \* \*

For these reasons, we AFFIRM the judgment of the district court.