In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3673

GARY VAUGHN,

*Plaintiff-Appellant,*

*v.*

THOMAS J. VILSACK,
Secretary, United States
Department of Agriculture,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:09-cv-00455-WDS—**William D. Stiehl**, *Judge*.

ARGUED OCTOBER 3, 2012—DECIDED MARCH 8, 2013

Before FLAUM, RIPPLE and WILLIAMS, *Circuit Judges*.

RIPPLE, *Circuit Judge.* Gary Vaughn is employed by the United States Department of Agriculture ("USDA"). In this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, he claims that he suffered retaliation for engaging in protected activity under the Act. The district court granted summary judg-

ment in favor of the Secretary.[1] Mr. Vaughn timely appealed.[2] For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

# BACKGROUND

## A. Facts

When reviewing a grant of summary judgment, we construe all facts in the light most favorable to the nonmoving party, here, Mr. Vaughn. *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012).

Mr. Vaughn started working for the United States Forest Service, an agency within the USDA, in 1974. At all relevant times, except when on temporary detail, he held the title of Career Development Specialist, a GS-9 position, and was assigned primarily to a facility in Golconda, Illinois. That facility is a Job Corps training center that the Forest Service operates for the Department of Labor.

This case involves two seemingly unrelated series of events in Mr. Vaughn's employment history that intersected to form the basis of the present action.

---

[1] The district court's jurisdiction was predicated on 28 U.S.C. §§ 1331 and 1343(a)(4).

[2] The jurisdiction of this court is predicated on 28 U.S.C. § 1291.

**1.**

The first course of events involves a series of earlier employment discrimination complaints filed by Mr. Vaughn. Most were internal complaints with his agency's Equal Employment Opportunity ("EEO") counselor. These were filed in 1997, 2004, 2005 and 2006. In these complaints, he accused the Forest Service of discrimination based on race and age, and of retaliation for exercising his right to bring such complaints. The 2005 complaint progressed to an action in the district court.

Mr. Vaughn and the USDA eventually settled all of those matters, including the litigation in the district court, in which he signed a settlement agreement on September 11, 2007. Two days later, he received a "letter of direction" from David Floyd, the director of the Golconda Job Corps Center (the "Center"). That communication informed Mr. Vaughn of a change in his work schedule. He would no longer work regular weekday hours. Instead, he would work Wednesday through Friday from 3:30 p.m. to midnight, and Saturday and Sunday from 8:00 a.m. to 4:30 p.m. Since receiving the letter of direction, Mr. Vaughn also has been passed over for a temporary assignment (what the parties call a "rotation" or "detail") to cover for a GS-11 employee on extended leave. At the Center, details for temporary positions typically are advertised and then held by the selected employee for no more than 120 days. The particular temporary position that Mr. Vaughn sought never was advertised, and his two co-workers who were selected each held the higher-paying job for longer

than 120 days. Mr. Vaughn submitted three requests for this detail and, after the third request, was told that he might be considered in the future.

During the same period, Mr. Vaughn was denied overtime opportunities. Director Floyd initially told Mr. Vaughn in March 2008 that management's confusion about the terms of his union contract explained the lack of overtime. In September 2008, however, the Forest Service transferred Mr. Vaughn to a different, newly created department, which removed him entirely from the overtime rotation.

**2.**

While the events that we just described were unfolding, a different series of events, parallel in its chronology, also was occurring and eventually intersected with those just described.

Beginning in 2005, Lynn Towery, the Career Development Manager at the Center, filed a series of harassment complaints against Mr. Vaughn. In April of that year, Mr. Vaughn and Ms. Towery had ended a five-year relationship. A few months after their break-up, Ms. Towery notified Michael Ayon, Mr. Vaughn's supervisor, that Mr. Vaughn was harassing her on the job by contacting her excessively for reasons unrelated to work. In June 2005, Ayon met with Ms. Towery and Mr. Vaughn; both employees agreed to limit all telephone and in-person contact at work to work-related issues. Less than a month later, however, Ms. Towery

accused Mr. Vaughn of not honoring their June 2005 agreement. After Director Floyd determined that Mr. Vaughn had violated that agreement, Mr. Vaughn was placed on paid administrative leave. The next day, Ms. Towery sought an order of protection from the Circuit Court of Saline County, Illinois. After a contested hearing, in which Ms. Towery, Mr. Vaughn and other witnesses testified, the state court granted Ms. Towery an order of protection. That order, issued in July, directed Mr. Vaughn to stay 500 feet away from her, except at work if their responsibilities necessitated otherwise.

Mr. Vaughn remained on administrative leave through July. The next month, he attended two sessions with a psychotherapist, who was tasked with evaluating his fitness to return to work. The psychotherapist concluded that, although Mr. Vaughn was mentally capable of returning, his "narcissistic" tendencies "would predictably exacerbate an already 'strained' workplace environment with Lynn Towery."[3] The psychotherapist also reported that Mr. Vaughn had acknowledged that Ms. Towery received the order of protection "due to his obsessive/compulsive contacts and phone calls with her and difficulty accepting the end of the relationship."[4]

The Forest Service permitted Mr. Vaughn to return to work in September 2005. Rather than assign him to his prior post, however, his superiors detailed him as a

---

[3] R.20-21 at 9.

[4] *Id.* at 4.

recreation specialist so that his schedule and tasks would not bring him into contact with Ms. Towery. They also instructed Mr. Vaughn not to contact her. To assure compliance with the order of protection, Director Floyd further directed Mr. Vaughn to stay within his work area unless otherwise granted permission. Five months later, in February 2006, the Forest Service lifted this restriction.

In April 2006, after his 2006 EEO complaint had been mediated, Mr. Vaughn returned to his old job. This move once again brought him into regular contact with Ms. Towery and her previous concerns resurfaced. Consequently, in August, Director Floyd notified headquarters in Washington about the conflict between the two employees and expressed concern that the tension was affecting employee morale. He suggested that "[t]he Center will be better off if these two people do not have to work in concert with each other."[5]

In October 2006, six months after Mr. Vaughn had resumed his old job, Director Floyd notified him that Ms. Towery had filed an internal formal complaint, alleging that he again was excessively contacting her.[6] The Director also informed him that several other employees had reported observing him following Ms. Towery's car in the parking lot, pulling in front of her and then slowing down. Director Floyd ordered Mr. Vaughn to refrain from contacting Ms. Towery by

---

[5]  R.20-6 at 3.

[6]  R.21 at 2.

phone, e-mail or in person, even for work-related matters. Director Floyd also warned him that violating these instructions would lead to disciplinary action, possibly including termination, and reminded him that he could file a grievance.

In February 2007, Ms. Towery filed an administrative complaint with the Equal Employment Opportunity Commission ("EEOC"), claiming sexual harassment. She alleged that management at the Center had failed to control Mr. Vaughn's continuous, non-work-related contacts, had facilitated his harassment by returning him to his old job where the opportunities for inter-action between them were greater and had failed to limit excessive and unnecessary phone calls and e-mails to work-related matters. On August 23, 2007, Ms. Towery and the USDA reached a settlement agreement that, in addition to providing monetary compensation to Ms. Towery, prohibited Mr. Vaughn from being on the job site at the same time as she. The letter of direction from Director Floyd that changed Mr. Vaughn's work hours was issued three weeks later.

### B. Procedural History

Mr. Vaughn linked the change in work hours, his exclusion from participating in the GS-11 rotation and the denial of overtime to the September 2007 settlement of his Title VII suit. He filed two more administrative complaints, alleging retaliation for his prior EEO activity. Those complaints were resolved against him in March and May 2009. After receiving a right-to-sue letter,

Mr. Vaughn filed suit against the USDA in the Southern District of Illinois on June 15, 2009. He claimed that Forest Service managers had retaliated against him for his prior EEO activity by changing his work schedule, denying his requests for a rotation in the GS-11 detail and denying him overtime opportunities.

The Secretary moved for summary judgment, arguing that the change in work schedule was necessary to comply with the terms of its settlement with Ms. Towery, whose accusations of harassment by Mr. Vaughn had been building for some time. The Secretary further explained that Mr. Vaughn's requests to participate in the GS-11 rotation and for overtime had to be denied as a necessary consequence of Ms. Towery's settlement.

The district court granted summary judgment in favor of the Secretary. The court concluded that Mr. Vaughn had failed to submit sufficient evidence to establish a prima facie case of retaliation under either the direct or indirect methods of proof. The court reasoned that the Secretary's evidence—nearly two years' worth of complaints from Ms. Towery and an order of protection issued by a state court—negated the possibility of inferring a causal connection between the September 2007 settlement of Mr. Vaughn's first lawsuit and the letter of direction that closely followed. Moreover, the district court continued, Mr. Vaughn had not established a prima facie case of retaliation because he could not have been meeting his employer's legitimate expectations while harassing a co-worker. Mr. Vaughn now appeals the judgment of the district court.

## II

## DISCUSSION

### A. Standard of Review

We review de novo the district court's grant of summary judgment. *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Jajeh v. Cnty. of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). We shall uphold a grant of summary judgment if "the pleadings, discovery and disclosure materials on file, as well as any affidavits, demonstrate that there is no genuine issue of material fact." *Winsley v. Cook Cnty.*, 563 F.3d 598, 603 (7th Cir. 2009) (citing former Fed. R. Civ. P. 56(c)).

### B. Retaliation Under Title VII

To establish a prima facie case of retaliation, a plaintiff may proceed under either the direct or indirect methods of proof. *Milligan v. Bd. of Trs. of S. Illinois Univ.*, 686 F.3d 378, 388 (7th Cir. 2012). Mr. Vaughn admits that he did not rely on the direct method in the summary judgment proceedings in the district court, and, consequently, he declines to contest that aspect of the district court's ruling. He insists, however, that he did establish a triable case of retaliation under the indirect method of proof.

To meet his initial burden under that method, Mr. Vaughn had to establish a prima facie case of retalia-

tion by demonstrating that: "(1) he engaged in a statutorily protected activity; (2) he met his employer's legitimate expectations . . . ; (3) he suffered a materially adverse action; and (4) he was treated less favorably than some similarly situated employee who did not engage in the statutorily protected activity." *Harper*, 687 F.3d at 309. If a plaintiff claiming retaliation produces evidence that could establish all four elements, the burden shifts to the defendant to offer a nondiscriminatory reason for the adverse action. *Id.* If the defendant identifies an appropriate reason, the burden shifts back to the plaintiff to supply proof that the proffered reason is pretextual. *Id.*

The Secretary did not dispute that Mr. Vaughn engaged in statutorily protected activity. The district court believed, however, that Mr. Vaughn's claim foundered on the second element of his prima facie case—whether he was meeting his employer's legitimate employment expectations. Mr. Vaughn now claims that the district court misapprehended that there was no dispute between the parties on this second element. He further submits that his evidence was sufficient to establish the remaining elements of his prima facie case and to demonstrate that the reasons given for the actions taken against him were pretextual. We now turn to an examination of these contentions.

**1.**

The record does not support Mr. Vaughn's contention that he was satisfying the legitimate performance

expectations of Forest Service management at the time he received the letter of direction. An employee who sexually harasses a co-worker cannot be considered to be meeting his employer's legitimate expectations "by any stretch of the imagination." *Grayson v. O'Neill*, 308 F.3d 808, 818 (7th Cir. 2002). Even if, as Mr. Vaughn asserts, his unwanted contacts did not rise to the level of actionable harassment *on account of sex*—the subject of Ms. Towery's EEOC complaint—he cannot contend seriously that he was performing his job in a manner that the Forest Service, or any other employer, would find acceptable. There is no validity to Mr. Vaughn's suggestion that an employer must tolerate harassment of a co-worker, no matter how offensive or disruptive to the workplace, so long as the harasser does not cross the threshold that will subject the employer to liability for ignoring the harassment. *See Hall v. Bodine Elec. Co.*, 276 F.3d 345, 359 (7th Cir. 2002) (explaining that the employer could have terminated plaintiff for engaging in "tawdry" conduct not amounting to sexual harassment to avoid future complaints of sex discrimination or harassment).[7] Mr. Vaughn had been warned that he

---

[7] *See also Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1191 (11th Cir. 1997) ("We are emphatically not holding, however, that an alleged sexual harasser cannot be fired. In fact, it may be prudent for an employer to fire or otherwise discipline a sexual harasser in order to avoid Title VII liability in the future."); *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir. 1991) (noting that while Title VII does not require employers to terminate all sexual harassers, "[e]mployers should impose

(continued...)

would be disciplined—up to and including termination—if he did not remedy his behavior. He cannot use his prior EEO activity as a shield against the consequences of his inappropriate workplace conduct. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (noting that "inappropriate workplace activities are not legitimized by an earlier-filed complaint of discrimination").

Mr. Vaughn attempts to discredit Ms. Towery's accusations by questioning her motives. He points to the affidavit of one co-worker who avers that he overheard Ms. Towery vow to "do whatever it takes to get Gary Vaughn fired."[8] Attacking her credibility, however, does not strengthen his argument that he was meeting his employer's legitimate performance expectations. Even if this affidavit could be said to cast doubt on the truth of Ms. Towery's allegations, it is irrelevant to whether Mr. Vaughn was fulfilling the Forest Service's expectations. The relevant inquiry is whether management *believed* in good faith that its decision with respect to Mr. Vaughn was appropriate to remedy behavior which, based on the information then available, only could be

---

[7] (...continued)

sufficient penalties to assure a workplace free from sexual harassment," among which may be removal to avoid Title VII liability); *cf. Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) (noting that "Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules").

[8] R.31.

described as harassing. *See Harper*, 687 F.3d at 310-11 (emphasizing facts known to employer at time of plaintiff's termination).

In sum, given the significant evidence before the Forest Service that Mr. Vaughn had engaged in inappropriate behavior in the workplace with respect to Ms. Towery, the record supports the Forest Service's view that it was permissible for it to act on that evidence to protect its employee and maintain the effectiveness of the office.

## 2.

Because Mr. Vaughn failed to establish all four elements of a prima facie case of retaliation under the indirect method, we do not need to address the issue of pretext. *See Harper*, 687 F.3d at 311. Mr. Vaughn's attacks on the USDA's investigation of Ms. Towery's claims highlight, however, that, in many cases, analysis of the "legitimate expectations" prong of the prima facie case is very much akin to, or merges with, the question of pretext.[9] That is the situation here, and thus summary judgment for the Secretary was appropriate even if we consider Mr. Vaughn's claim that the USDA's explanation for its actions against him is pretextual.

---

[9] *See, e.g., Benuzzi v. Bd. of Educ. of Chicago*, 647 F.3d 652, 663 (7th Cir. 2011); *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 477 (7th Cir. 2010); *Jones v. Union Pac. R.R. Co.*, 302 F.3d 735, 742 (7th Cir. 2002).

The focus of the pretext inquiry is whether the proffered reason for issuing the letter of direction is a lie. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). Mr. Vaughn contends that the USDA's explanation—that action was taken as required by its settlement with Ms. Towery—must be false because, he insists, Forest Service management "never *investigated* Towery's claims *at all.*"[10] Instead, he says, the USDA implemented the adverse actions without telling him about Ms. Towery's accusations or giving him an opportunity to respond. The record does not support this contention.

The investigation window opened in 2005 with Ms. Towery's first accusation of harassment, not twenty months later when she finally filed an administrative complaint with the EEOC. During the interim, management received numerous complaints from Ms. Towery, placed Mr. Vaughn on administrative leave after investigating her allegations, reviewed a psychotherapist's report as well as reports from other employees about his threatening behavior toward her and consulted with headquarters in Washington. Mr. Vaughn knew about these accusations to management but never denied them. He even acknowledged his "obsessive/compulsive contacts" with Ms. Towery.[11] This information amassed by management renders baseless Mr. Vaughn's charge of a sham investigation. *See, e.g.,*

---

[10] Appellant's Br. 28.

[11] R.20-21 at 4.

*Luster v. Illinois Dep't of Corr.*, 652 F.3d 726, 729, 733 (7th Cir. 2011) (concluding that the employer conducted a reasonable investigation of a co-worker's accusation of sexual harassment against plaintiff by interviewing plaintiff, the complaining co-worker and two witnesses). The fact that the USDA did not interview Mr. Vaughn during the course of the EEOC investigation is not fatal. *See Davis v. Time Warner Cable of Southeastern Wis., L.P.*, 651 F.3d 664, 674 (7th Cir. 2011) (noting that the employer's failure to interview employee during course of a pre-termination investigation was not enough, by itself, to raise inference of pretext).

Mr. Vaughn next argues that an inference of pretext arises from what he describes as contradictory explanations for refusing him overtime. Inconsistent or shifting employer explanations, in some cases, can provide a reasonable basis for finding pretext. *Silverman v. Bd. of Educ. of Chicago*, 637 F.3d 729, 737 (7th Cir. 2011); *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 577 (7th Cir. 2003) (holding that explanations can provide a basis for finding pretext if they are sufficiently shifting and inconsistent to permit an inference of mendacity). Director Floyd initially attributed the absence of overtime to a misreading of the labor agreement. After that misunderstanding was dispelled, however, Mr. Vaughn was told that giving him overtime was impossible because those hours would require him to work during Ms. Towery's shifts, which the settlement agreement with her forbids.

These are not inconsistent explanations. Mr. Vaughn knew from the time his schedule was first changed that

he could no longer work during Ms. Towery's work hours; management's explanation that this no-contact restriction effectively precluded overtime hours is consistent with Mr. Vaughn's inability to be at the Center at the same time as Ms. Towery. Director Floyd's misreading of the union contract imposed what Mr. Vaughn thought was an *additional* restriction on his working overtime; Director Floyd's later correction of that mistake and reminder to Mr. Vaughn that overtime still was not available due to Ms. Towery's settlement constituted reconfirmation of an existing explanation, "rather than an abrupt change in explanation." *Schuster*, 327 F.3d at 579.

Mr. Vaughn further submits that management's explanation for denying him overtime is pretextual because, soon after the misunderstanding about his contract was resolved, he was placed in a newly created department, which eliminated him entirely from overtime consideration. At summary judgment, Mr. Vaughn insisted that this change in assignment was suspicious, not only because of its timing, but also because the only other person reassigned to that department, Jane Parker, also had lodged a charge of discrimination. The two of them, Mr. Vaughn asserted, were the only non-managerial employees at the Center who had engaged in EEO activity in the recent past. In fact, Mr. Vaughn's evidence discloses a third non-managerial employee who had engaged in EEO activity but was not assigned to the new department. Mr. Vaughn tried to distinguish that employee from himself and Parker by pointing to evidence that the other employee's EEO activity had taken place "many

years ago."[12] Yet, he never defined "many years," making the proposed distinction of little analytical usefulness.

In any event, Mr. Vaughn's transfer to the new department does not raise any inference of pretext because the status quo remained unchanged after the reassignment. Before the move, Mr. Vaughn was in a position where overtime was authorized but unavailable to him because additional hours would bring him in contact with Ms. Towery; after the move, overtime was simply not available. Mr. Vaughn's transfer therefore did not place him in a situation any worse than the one in which he had been before the transfer. He could not work overtime in either job, and at summary judgment, he never suggested that the new position had other negative attributes not present in his previous position.

Lastly, Mr. Vaughn argues that management's explanation that he could not rotate into the GS-11 position because of Ms. Towery's settlement must be pretextual because he had not been told why he could not perform the detail during his new hours. Mr. Vaughn's argument fails, however, in light of the job duties of the position. The detailee "is responsible for the supervision and administration of the entire 'vocation trades' section of the facility, including carpentry, masonry, and electrical, as well as the maintenance of the Center."[13] At summary judgment Mr. Vaughn did not even suggest, let alone present evidence, that all of those activities could be

---

[12] R.28-3 at 4.

[13] R.2-2 at 2.

supervised without ever being on the premises during normal work hours.

In sum, Mr. Vaughn has failed to establish a prima facie case of retaliation because he has failed to demonstrate that he was meeting his employer's legitimate expectations. Moreover, even if we consider Mr. Vaughn's claim that the USDA's explanation of its actions against him is pretextual, the Secretary has put forward, and he has failed to rebut, a legitimate reason for the action that was taken.

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED