NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 29, 2013[*]
Decided March 29, 2013

**Before**

WILLIAM J. BAUER, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 12-1885

| | |
|---|---|
| DEANDRIA CAMPBELL, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 10 C 2586 |
| ADVENTIST HINSDALE HOSPITAL, | |
| *Defendant-Appellee.* | Joan H. Lefkow, *Judge*. |

**O R D E R**

DeAndria Campbell, an African-American woman, appeals the grant of summary judgment in favor of Adventist Hinsdale Hospital in this suit for employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a). Because Campbell provided insufficient evidence that she met Adventist's legitimate job expectations and that Adventist treated her less favorably than comparable employees, she did not make a prima facie case of discrimination or retaliation. Accordingly, we affirm the judgment.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

We present the facts in the light most favorable to Campbell. Adventist hired Campbell in 2006 to register patients, verify their insurance, enter medical data, and label specimens. Her annual work evaluations over the next three years document her gradually deteriorating performance. For her first evaluation, in 2007, Adventist rated her "satisfactory" and she received a 4.1% hourly rate increase. A year later Campbell received a below-satisfactory rating and only a 3.6% hourly rate increase; the evaluation stated that she needed to improve her attendance and proofread her work. In her third evaluation, for 2009, Campbell received another below-satisfactory rating and no hourly rate increase. This evaluation warned Campbell that she needed to improve her attendance, stop making registration errors, and work better with fellow employees.

Campbell's supervisors often disciplined her for performance deficiencies. Between 2006 and 2008, Adventist warned her that she had mislabeled specimens, entered orders incorrectly, missed work excessively, and was insubordinate. Adventist suspended her in January 2009 after she became hostile with a co-worker who discovered that Campbell had committed an error, and the company cautioned her that any additional infractions would result in discharge. A month later Adventist criticized Campbell for absenteeism, and in June, Adventist disciplined her again for creating duplicate medical records.

In an attempt to rectify Campbell's performance problems, in the second half of 2009 Adventist placed her on a work improvement plan. The plan noted that she had been using the phone and internet for non-work purposes and instructed her to stop these workplace distractions. The plan also required her to increase her work volume and decrease errors. Adventist again warned her that further problems would lead to termination. Campbell complained to the director of human resources that the improvement plan was retaliation for an earlier complaint against her manager, Justin Jandrisits, who had commented on Campbell's friendship with a white co-worker. Jandrisits had expressed surprise to the co-worker that she and Campbell socialized, saying "you two don't seem like a good fit." Campbell believed that comment was racially derogatory. After investigating the complaint, the director concluded that nothing discriminatory or retaliatory had occurred.

About two months after Adventist created the improvement plan, it disciplined Campbell for placing double orders and mislabeling a specimen. After Campbell returned from a short medical leave, Jandrisits received reports from other employees that Campbell was still making personal phone calls at work and clashing with co-workers. Jandrisits consulted with his supervisors and human resources and determined that Campbell was not fulfilling the work improvement plan; Adventist then fired her in December 2009.

In this suit, Campbell contends that Adventist racially discriminated against her and retaliated against her for her complaint against Jandrisits by (1) criticizing her job performance, (2) placing her on a work improvement plan, and (3) firing her. Adventist moved for summary judgment, and Campbell opposed it by relying on only the indirect method of proof. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). She argued

that her two wage increases were evidence that she was meeting Adventist's legitimate performance expectations, and argued that she was treated less favorably than Fay Bautista, a Pakistani data-entry clerk about whom, Campbell asserted, Jandrisits also received complaints but whom he did not discipline or fire.

The district court granted summary judgment for Adventist. The court reasoned that Campbell's modest raises in 2007 and 2008 do not show that she was meeting Adventist's legitimate performance expectations. The court also observed that Campbell did not dispute that she was disciplined several times for performance deficiencies and excessive absences. And even if Campbell met Adventist's expectations, the court concluded, she did not show that Adventist treated any similarly situated employees more favorably. In reaching this conclusion, the court noted that Campbell "blatantly misstates the record" by asserting that Jandrisits received complaints about Bautista yet did not discipline her: Jandrisits testified that he received complaints *from* Bautista, not about her.

On appeal Campbell first argues that under the indirect method of proof she presented sufficient evidence of a prima facie case of discriminatory discharge. To avoid summary judgment under the indirect method, Campbell must submit evidence that (1) she is a member of a protected class; (2) she met Adventist's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated individuals outside of her protected class received more favorable treatment. *See McDonnell Douglas Corp.*, 411 U.S. at 802; *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012).

Campbell relies on her first performance evaluations and two wage increases to show that she was meeting Adventist's legitimate performance expectations when it fired her. But her one satisfactory evaluation in 2007 and two wage increases in 2007 and 2008 predate the adverse employment action by over a year. Because these favorable events are not close in time to her discharge, they do not help her in this case. *See Dear v. Shinseki*, 578 F.3d 605, 610 (7th Cir. 2009) (disregarding positive evaluations that predated demotion by six months because they did not show that plaintiff was performing adequately "at the time" of the adverse employment action); *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 545–46 (7th Cir. 2002) (disregarding performance award that plaintiff received two months before discharge because he later violated workplace rules).

Instead of showing that she was meeting Adventist's expectations, the record reveals that at the time Adventist fired Campbell, and in the year preceding the discharge, her performance was deficient: Her final evaluation states that her work was unsatisfactory; she received no raise in her last year, and during 2009 Adventist disciplined her for mislabeling specimens, duplicating records, clashing with co-workers, using the phone and internet for personal purposes, excessive absences, and failing to adhere to the performance improvement plan.

Campbell denies that she double-ordered products and mislabeled specimens in August 2009, and argues more broadly that Adventist applied unfairly to her its performance review process. But she does not dispute her many other workplace violations throughout 2009. And she does not cite to any relevant evidence in the record to support her contention that Adventist evaluated her work more harshly, or demanded adherence to workplace standards more rigorously, than for her co-workers. We thus agree with the district court that because Campbell did not demonstrate that she was meeting Adventist's legitimate expectations when it fired her, she does not present a prima facie case of race discrimination.

But even if Campbell had presented evidence that she was meeting Adventist's expectations, we agree with the district court that she identified no similarly situated employees who Adventist treated more favorably. As she did in the district court, Campbell argues that Jandrisits received complaints about Bautista but refused to discipline her. And as she also did in the district court, Campbell misstates the record: Jandrisits testified that he received complaints from Bautista about Campbell; nothing in the record suggests that he received complaints *about* Bautista. In any case, Campbell does not describe the content of these alleged complaints against Bautista, so it is impossible to know if Bautista's asserted deficiencies were similar to Campbell's. This evidentiary gap in the record extends to her reply brief, where Campbell argues that five Caucasian data-entry clerks committed clerical errors like she did, and yet Adventist fired none of them. But Campbell waived this argument by not presenting it first to the district court, and in any case she does not cite any evidence from the record to support her assertion. *See Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 650 (7th Cir. 2011). Without evidence of comparable performance problems in a co-worker, Campbell has no basis in the record to argue that Adventist disciplined her more harshly than others for similar conduct. *See Antonetti v. Abbott Labs.*, 563 F.3d 587, 592 (7th Cir. 2009); *Radue v. Kimberly-Clarke Corp.*, 219 F.3d 612, 617–18 (7th Cir. 2000).

Finally, Campbell argues that she presented sufficient evidence to the district court to establish a prima facie case of retaliation for her complaint about Jandrisits. Under the indirect method of proof, the method that she uses here, Campbell is required to furnish evidence that she was meeting her employer's legitimate expectations. *See Keeton*, 667 F.3d at 885; *Dear*, 578 F.3d at 610–11. But, as we observed earlier, Campbell has not done so.

**AFFIRMED**.