**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 13, 2014[*]
Decided February 13, 2014

**Before**

RICHARD A. POSNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 13-2048

| | |
|---|---|
| VERA D. ERVINGTON, | Appeal from the United States District |
| *Plaintiff–Appellant*, | Court for the Northern District of |
| | Illinois, Eastern Division. |
| *v.* | No. 09 C 7313 |
| LTD COMMODITIES, LLC, | William T. Hart, |
| *Defendant–Appellee*. | *Judge*. |

**O R D E R**

Vera Ervington, an African-American Christian, appeals the grant of summary judgment against her in this employment-discrimination action, alleging that her employer retaliated against her, failed to promote her because of her race, and

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2).

discharged her because of her religion. Because Ervington has not provided evidence of retaliation or discrimination, we affirm.

LTD Commodities, LLC, a catalog company specializing in business-to-business sales, hired Ervington in 2002 and promoted her multiple times over the next three years. But tensions arose between Ervington and the company in 2005, following a team meeting about the company's Halloween potluck. Ervington supervised this meeting of around ten employees and told them that, according to her religion, Halloween could not be celebrated because it mocked God and praised witches. Some of the other team members agreed and expressed their concerns to a manager, who renamed the event the Harvest potluck.

A couple of months later, Ervington reprimanded Lois Vallot (one of her subordinates) in front of the team, and Vallot responded by telling Ervington to "shut up." Vallot complained about this incident to a manager, who then advised Ervington to criticize employees in private. A few days later, Vallot told management that Ervington began treating her adversely after she had expressed discomfort at the potluck discussion with Ervington imposing her religious beliefs on the team. Ervington's managers admonished Ervington that personal beliefs had no place in a business meeting and should be discussed only during breaks with willing participants. The company also issued Vallot a warning for telling Ervington to shut up.

These incidents affected Ervington's October 2006 performance appraisal, which, though positive overall, noted that she had been advised to focus on business issues and not to share her personal and spiritual views at work. The appraisal urged her to soften her supervisory approach and improve her computer skills. Ervington contested the appraisal with management, requesting, among other things, the expungement of any reference to her personal and spiritual beliefs. Management eventually agreed to remove the references to the Halloween discussion from the appraisal in one year if no similar problems recurred.

The 2006 appraisal was used to evaluate Ervington's candidacy for assistant supervisor, a position that she had applied for earlier that year. In January 2007, the company passed over Ervington and offered the position to another African-American candidate, who declined. The company then promoted Amelia Coleman Martinez, a Hispanic woman, to the position. Coleman had been at the company four years longer than Ervington, and her most recent performance appraisal lauded her strong supervisory and organizational skills. Ervington filed a charge with the Equal

Employment Opportunity Commission, alleging that she was denied the promotion because of her race and religion. A few months later, Ervington's managers asked her if she would like to apply for another assistant supervisor position, but she declined.

The incident that led to Ervington's discharge occurred in October 2009, when LTD Commodities held a Halloween celebration during work hours. As she had done in the past, Ervington handed out bags that contained candy and pamphlets known as "gospel tracts." Some of the tracts negatively depicted Muslims and Catholics, and stated that they would go to hell. Asad Tanwir, a Muslim employee, told Ervington that he did not share her beliefs and returned the bag he had received. Another employee complained to her supervisor about Ervington's tracts and disparaging comments to Tanwir (which Ervington denies making). During the company's subsequent investigation of the complaint, Tanwir stated that one tract angered him because it disrespected the Prophet Muhammad and that Ervington rebuffed his attempt to return the tracts by telling him that her religion was right. The investigation also revealed that Ervington, Tanwir, and another employee had discussed religion about a week before the Halloween celebration, and that Tanwir had told the other employee to study Islam because it is "the right way to learn about God."

At the end of the investigation, the company fired Ervington for violating the company's anti-harassment policy (by distributing tracts that were offensive to other employees). The investigators concluded that Tanwir had also violated the policy—by telling an employee that her religion was wrong—and the company warned him in writing that he would be discharged if he violated the policy again.

Ervington filed a second EEOC charge based on the discharge and then sued LTD Commodities. She alleged (1) that the company violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3, by firing her because of her religion and in retaliation for filing her earlier EEOC charge, and (2) that the company violated Title VII and 42 U.S.C. § 1981 by failing to promote her because of her race and because she challenged her performance appraisal. (Ervington also alleged that the company failed to promote her because of her religion, but she does not pursue this claim on appeal.)

The district court granted summary judgment for the company, concluding that Ervington failed to make out a prima facie case of retaliation or discrimination. The judge found that the company could not have retaliated against Ervington by denying her a promotion because the denial occurred before she filed her first charge with the

EEOC. Analyzing the discrimination claims under the indirect method, the judge concluded that Ervington's failure-to-promote claim based on race could not succeed because undisputed evidence showed that management reasonably believed that Coleman was the more qualified candidate. The claims related to Ervington's discharge also failed, the court explained, because there was no evidence that Ervington had been singled out: Tanwir received a written warning for violating the anti-harassment policy, and Ervington submitted no evidence that other employees who, like her, had *repeatedly* violated the policy had been treated more favorably. Moreover, enforcing a neutral anti-harassment policy, the judge concluded, does not violate Title VII.

On appeal, Ervington reiterates the arguments she presented to the district court. She maintains that, under Title VII, the company wrongfully discharged her for distributing the tracts because proselytizing is a part of her religious practice. The legal basis for Ervington's assertion is unclear, but to the extent that she relies on a failure-to-accommodate theory, her argument fails because LTD Commodities was not required to accommodate Ervington's religion by permitting her to distribute pamphlets offensive to other employees. *See Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 607–08 (9th Cir. 2004); *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1021 (4th Cir. 1996).

To the extent that Ervington's argument is based on a disparate-treatment theory, it also fails because she cannot show that the company would have applied its anti-harassment policy differently if she belonged to another religion. *See Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 540–42 (7th Cir. 2005). Tanwir may have received only a written warning for violating the anti-harassment policy, but as the district court explained, he was not similarly situated to Ervington because he had not previously been counseled by management against imposing his religious beliefs on other employees. *See Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 365–66 (7th Cir. 2009); *Dear v. Shinseki*, 578 F.3d 605, 610 (7th Cir. 2009). Ervington also maintains that her discharge violated Title VII because she was not engaged in *unlawful* harassment of other employees. But Title VII does not prohibit employers from enforcing an anti-harassment policy that defines harassment more broadly than does Title VII. *Vaughn v. Vilsack*, 715 F.3d 1001, 1006–07 (7th Cir. 2013).

Ervington reiterates that the company failed to promote her because she is African-American.[1] But as the district court explained, the company articulated

---

[1] Ervington brings her claim of race-based discrimination under both Title VII and 42 U.S.C. § 1981. Our analysis is the same under either statute. *See Hobbs v. City of*

nondiscriminatory reasons for selecting another candidate, and Ervington offers no evidence that those reasons are pretextual. *See Hester v. Ind. State Dep't of Health*, 726 F.3d 942, 947 (7th Cir. 2013)*; Jajeh v. Cnty. of Cook*, 678 F.3d 560, 572 (7th Cir. 2012); *Stockwell v. City of Harvey*, 597 F.3d 895, 903 (7th Cir. 2010). Affidavits submitted by the company show that the hiring managers chose Coleman because of her greater supervisory and technical skills. And before promoting Coleman, the company offered the position to an African-American woman who turned it down.

Finally, Ervington generally contests the grant of summary judgment on her retaliation claims. With regard to her claim that the company did not promote her because she complained about her 2006 performance appraisal, we agree with the district judge that the denial could not have been retaliatory because Ervington had not yet filed an EEOC charge (and her earlier complaint to management is not protected under Title VII because she did not show that she was opposing any unlawful employment practice). *See Northington v. H & M Int'l*, 712 F.3d 1062, 1066 (7th Cir. 2013). With regard to her claim that she was discharged in 2009 in retaliation for filing an EEOC charge in 2007, the district court properly concluded that she failed to show that she was treated differently from similarly situated employees or that the company's stated reason for discharging her was pretextual. *See Majors v. Gen. Elec. Co.*, 714 F.3d 527, 539–40 (7th Cir. 2013); *Harper v. C.R. England, Inc.*, 687 F.3d 297, 311–13 (7th Cir. 2012).

AFFIRMED.

---

*Chicago*, 573 F.3d 454, 460 n.1 (7th Cir. 2009).