NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 7, 2019
Decided September 13, 2019

**Before**

DANIEL A. MANION, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 19-1068

| | |
|---|---|
| ALEJANDRA AGÜERO, <br>     *Plaintiff-Appellant,* | Appeal from the United States District <br> Court for the Central District of Illinois. |
|     *v.* | No. 16-CV-2298 |
| BOARD OF TRUSTEES OF THE <br> UNIVERSITY OF ILLINOIS, <br>     *Defendant-Appellee.* | Colin S. Bruce, <br> *Judge.* |

**O R D E R**

The University of Illinois chose not to renew Alejandra Agüero's employment contract after she received multiple unsatisfactory performance reviews. In response she sued the Board of Trustees, alleging claims of racial and national-origin discrimination. *See* 42 U.S.C. §§ 2000e *et seq*. Because the record showed that Agüero was not meeting her employer's legitimate expectations, the district court granted the Board's motion for summary judgment. We affirm.

Agüero, a native of Mexico, worked at the University of Illinois from 2001 until her contract expired in 2016. She held a number of positions, but the relevant facts for this litigation stem from her time as Assistant Director of the Center for Professional

Responsibility in Business and Society, which began in October 2014. In this position Agüero processed reimbursements for the center's accounts under the supervision of Gretchen Winter and Mark Peecher.

In the summer of 2015, Winter and Peecher asked Agüero to draft a report of all the gifts received by the center. Agüero was unsure whether that meant to include the "Conference Board Account" because Winter told her to "assign a gift that was about to arrive … to this account." At a meeting in early September, Agüero discussed the matter with Winter, Owens (an accountant who helped train Agüero in the position), and Jay Young (an administrative assistant). Young explained that the account should not be listed in the report.

Ten days later Agüero reported her concern about possible misuse of the Conference Board Account to the University Office of Ethics & Compliance. Donna McNeely, that office's executive director, told Agüero she would investigate. McNeely then met with Owens, Young, and Arlene Elliott, one of Agüero's former supervisors in a different department, about proper handling procedures for these funds. McNeely did not reveal that Agüero had filed an ethics complaint, and nobody mentioned the conversation to Winter or Peecher.

Around the same time, Winter and Peecher completed Agüero's annual performance evaluation. They rated her performance as "Not Acceptable" or "Needs Improvement/Not Acceptable" in every category. The evaluation also questioned her judgment and knowledge of the position.

The next day Agüero told McNeely that she had been harassed because of her concerns about the Conference Board Account. McNeely confirmed that she had contacted the College of Business to investigate Agüero's complaint and told Agüero to contact the University's Office of Diversity, Equity and Access if she felt she was being harassed.

Soon after Agüero did just that. She told Jennie Duran, an EEO Investigator in the diversity office, that she was being discriminated against because of her sex, race, and national origin. Duran's notes from their discussion state that Agüero's concerns seemed to arise from a personality conflict rather than from unlawful discrimination by a supervisor. She referred Agüero to Academic Human Resources.

In the meantime Agüero struggled to meet her supervisors' expectations. In December 2015 Winter asked Agüero "what [she] was doing and … why [she] was

doing what [she] had done," which Agüero took as a reference to her complaints to the ethics and diversity offices. In Agüero's evaluation later that month, Winter and Peecher again concluded that her performance was "Not Acceptable" in every category. Agüero complained to Duran that this was additional evidence of discrimination.

Winter and Peecher gave Agüero her third and final performance review in April 2016. Once more they rated Agüero's performance as "Not Acceptable." And this time they recommended that the University not renew her contract. Elliott arranged for Agüero to fulfill the remainder of her term in a temporary position.

Agüero then sued the Board of Trustees, alleging discrimination based on her race and national origin. *See* 42 U.S.C. § 2000e-2. (She also asserted sex-discrimination and retaliation claims, but she has not pursued either on appeal.) The district court granted the Board's motion for summary judgment because Agüero failed to establish a prima facie case of racial or national-origin discrimination and because she had not presented sufficient evidence of discriminatory animus.

We review a summary judgment de novo, construing all facts and drawing all reasonable inferences in Agüero's favor. *See Abrego v. Wilkie*, 907 F.3d 1004, 1011 (7th Cir. 2018). To survive summary judgment, Agüero must point to evidence that would permit a reasonable fact-finder to conclude that the Board's decision not to renew her contract was due to her race or national origin. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Agüero relies on our pre-*Ortiz* caselaw, which had separated "discrimination claims into 'direct' and 'indirect' categories and assign[ed] different legal standards to each." *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017). She first argues, based on what we used to refer to as the "direct" method of proof, that the timing of her first negative performance evaluation—just ten days after her complaint to the ethics office—is suspicious. She says the same about the timing of her eventual termination, which occurred a few months after she filed the harassment complaint with the University. Suspicious timing alone is rarely sufficient to create a triable issue in a discrimination claim. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 665 (7th Cir. 2006). And while it may be relevant to a retaliation claim, *see, e.g.*, *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 565 (7th Cir. 2015), Agüero has not pursued her retaliation claim on appeal. Accordingly, the argument about suspicious timing is not enough to justify a trial on Agüero's discrimination claim.

Shifting gears, Agüero tries to establish a prima facie case under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which requires that she demonstrate that (1) she is a member of a protected class; (2) she performed her job to her employer's expectations; (3) she suffered an adverse employment action; and (4) one or more similarly situated individuals outside her protected class received better treatment. *Ferrill*, 860 F.3d at 500.

This argument also fails because Agüero cannot demonstrate that she performed to the University's expectations. She maintains that her "outstanding" performance reviews from 2001 to 2008 and subsequent positive feedback from Winter showed that she was performing satisfactorily. But Agüero never identified any evidence in the record supporting this point, so the district judge did not consider it. *See* C.D. ILL. L.R. 7.1(D)(2)(b). Neither will we because we are confined to the same record. *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013).

Moreover, any positive feedback that Agüero received at a different time and in a different position is irrelevant. Instead, what matters is whether Agüero was meeting her employer's expectations as Assistant Director of the Center for Professional Responsibility in Business and Society at the time her contract was not renewed in 2016, not whether she had done so in a different position years earlier. *See Dear v. Shinseki*, 578 F.3d 605, 610 (7th Cir. 2009). And it's clear from the consistently negative performance reviews in the Assistant Director role that she was not meeting those expectations.

No reasonable jury could conclude that that Agüero's race or national origin was the principal motivation behind the University's decision not to renew her contract. The judge correctly entered summary judgment for the Board of Trustees.

AFFIRMED