THIRD DIVISION
JUNE 25, 2008

1-06-1992

| | | |
|---|---|---|
| RADOMIL HNILICA and RADOMIRA HNILICOVA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| RIZZA CHEVROLET, INC., | ) | |
| | ) | No. 04 L 1450 |
| Defendant | ) | |
| | ) | |
| | ) | |
| (General Motors Acceptance Corporation, | ) | Honorable |
| | ) | Brigid Mary McGrath, |
| Defendant-Appellee). | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the opinion of the court:

The plaintiffs, Radomil Hnilica and Radomira Hnilicova[1], appeal from the dismissal with prejudice of their fifth amended complaint against General Motors Acceptance Corporation (GMAC). Their claims against defendant Rizza Chevrolet, Incorporated (Rizza), are still pending in the circuit court of Cook County. The trial court made a finding pursuant to Supreme Court Rule 304(a) that there was no just reason for delaying enforcement or appeal of the order dismissing the fifth amended complaint with prejudice. 134 Ill. 2d R. 304(a).

The plaintiffs are only appealing the dismissal of three of the counts in their fifth amended complaint: count I, alleging that GMAC defamed them by reporting negative and false credit information; count II, alleging that GMAC violated the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1994)); and count III, alleging that GMAC is

---

[1]Radomira Hnilicova's last name is also spelled Hnilica in the record.

derivatively liable for the $4,000 given to Rizza by the plaintiffs as what they claim was a security deposit for their weekend test drive of the vehicle that they were considering purchasing. We affirm the trial court's order as to the defamation and derivative claim counts (I and III), but reverse and remand for further proceedings on the consumer fraud count (II).

BACKGROUND

In pertinent part, the plaintiffs alleged the following in their fifth amended complaint. On Thursday, May 23, 2002, the plaintiffs visited Rizza to shop for a car. At that time plaintiff Hnilica could neither speak nor write English. Plaintiff Hnilicova had only a very limited ability to speak and read English. Rizza's salesperson convinced the plaintiffs that over the weekend they should take home and test drive a van being sold by Rizza. The salesman told them they could return the van the following week if they decided not to buy it. He also convinced them to sign papers which he asserted were designed only to ensure that they returned the van. At the salesman's suggestion the plaintiffs also left their intended trade-in vehicle at Rizza, along with two postdated checks totaling $4,000. The salesman told them these checks were merely to be used as security and would be returned to them if they chose not to buy the van and returned it to Rizza. The documents signed by the plaintiffs were in fact a buyer's order and a finance contract. When they attempted to return the van after the weekend, Rizza refused to take it back and also refused to return their checks and their own car to them. The plaintiffs retained an attorney and, among other actions, attempted to cancel the contract, pursuant to its terms, because no financing had been obtained for them within 15 days of the date of the contract. Rizza refused to cancel the contract. GMAC twice declined to

accept assignment of the contract[2], but did accept it on August 15, 2002, almost three months after Rizza and the plaintiffs signed the contract. That same week, GMAC received two payments totaling $1,391.94 from Rizza, purportedly on behalf of the plaintiffs pursuant to the contract. The plaintiffs' attorney subsequently, on September 24, 2002, orally notified GMAC that his clients considered the contract to be void because of the failure to obtain financing within the required 15-day period. He specified that his clients had, on July 26, 2002, cancelled the contract pursuant to that clause.

On October 3, 2002, the plaintiffs' attorney sent a letter to GMAC, expressly advising it that:

> "The contract was cancelled based on no financing. The
> purchase agreement states the dealership must provide financing at
> the agreed rate within 15 business days of the date of signing. If they
> can't, then my clients have the right to cancel the agreement. No
> financing was available and none was provided. My clients have
> numerous denial letters regarding Rizza's numerous attempts to
> finance the contract. Rizza continued to submit these requests after
> the 15 days had elapsed, and after we had formally notified them that
> we were cancelling the contract *** (although we continue to dispute
> its validity) and after we ordered them to stop attempting to finance

---

[2]The acceptance-of-assignment document is contained in the record on appeal. However in the appendix to their opening brief, the plaintiffs have included a purported copy of this document in which the acceptance portion has been deleted.

3

the van." (Emphasis in original.)

Plaintiffs' counsel also informed GMAC in that letter of the Rizza salesman's alleged fraud and misrepresentations in which he convinced the plaintiffs that they were merely trying the van out for the weekend and that they were only signing documents for the rental of the vehicle over the weekend.

GMAC subsequently repossessed the van and reported to four credit agencies that the plaintiffs had an account with GMAC; that plaintiffs had failed to timely pay on that account; and that the van was repossessed. GMAC's internal investigation revealed that the plaintiffs did have the right to cancel the contract under its 15-day financing requirement, but it made no finding as to whether the plaintiffs had in fact legally done so. It also made no credibility determination concerning the plaintiffs' claim that they had not understood that they were purchasing a van when they signed the purchase documents. The GMAC employee who investigated the matter internally recommended that GMAC investigate the matter further, but also reported that Rizza told him that its dealings with the plaintiffs had been "above-board." During the course of the pretrial proceedings in the circuit court, GMAC tendered to the plaintiffs the amount paid to it by Rizza ($1,391.94) on the plaintiffs' account, but the plaintiffs refused to accept the money.

ANALYSIS

We first consider the plaintiffs' contention in count I that GMAC defamed them by reporting to credit agencies that the plaintiffs had an account with GMAC (thus adding about $40,000 to the plaintiffs' debt as reported in credit agency data files) and that GMAC had repossessed the van and had written off the account as a bad debt. Harmful statements are defamatory only if they are false.

J. Maki Construction Co. v. Chicago Regional Council of Carpenters, 379 Ill. App. 3d 189, 203, 882 N.E.2d 1173, 1186 (2008) (statement that plaintiff had been convicted of defrauding a union was not defamatory where the plaintiff had been so convicted in internal union proceedings). Here, even according to the allegations of the plaintiffs' complaint, all of these statements are demonstrably true. Truth is an absolute defense to defamation; true statements cannot support a claim of defamation. Altman v. Amoco Oil Co., 85 Ill. App. 3d 104, 107, 406 N.E.2d 142, 144 (1980). However, what the plaintiffs are really asserting is that if they prevail against Rizza, the contract will then be deemed to be void because of fraud and the violation of the financing deadline. They reason that this will in turn invalidate the repossession, the statement of account, and their bad debt write-off as reported by the credit agencies. But even assuming that the plaintiffs prevail, the statements which they claim to be defamatory were in fact true when they were made to the reporting agencies, and thus there can be no action for defamation.

Count II alleges that GMAC engaged in unfair or deceptive trade practices under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq*. (West 1994)). Plaintiffs allege that GMAC knew that the sales contract between Rizza and the plaintiffs was fraudulently obtained and therefore void, yet GMAC continued to treat that contract, assigned by Rizza, as valid, to the detriment of the plaintiffs. GMAC relies primarily on Jackson v. South Holland Dodge, Inc., 197 Ill. 2d 39, 755 N.E.2d 462 (2001), in opposition to the plaintiffs' argument. In Jackson the plaintiffs were car purchasers who sued an automobile dealership and Chrysler Financial Corporation, the assignee of the sales contract. The plaintiffs in that case alleged that the dealership's contract falsely stated that the entire amount of a payment for an extended

warranty was paid to Chrysler. In fact, the dealership kept a substantial portion of that payment. The plaintiffs alleged that Chrysler was liable for this fraudulent activity because, based on its extensive experience in financing automobile sales contracts, it had actual knowledge of the fraudulent practice of misrepresenting to customers that all of the extended warranty payment went to the manufacturer. The Jackson court rejected this reasoning, noting that Chrysler had complied with all of the requirements of the Truth in Lending Act (TILA) (15 U.S.C. §1601 *et seq*. (1994)) by ascertaining that there were no misrepresentations apparent on the face of the contract and that compliance with TILA was a bar to a finance company's (Chrysler) liability as the assignee of an automobile sales contract. But the Jackson court also noted that TILA would not be applicable, and the plaintiffs might have a remedy, if they could establish that Chrysler had engaged in active and direct fraud. Jackson, 197 Ill. 2d at 44, 755 N.E.2d at 466.

The trial court in this case relied upon TILA to determine that because there was no allegation of misrepresentation on the face of the contract assigned to GMAC, the plaintiffs did not have a cause of action under this count. However, the plaintiffs have alleged the active and direct fraud by GMAC which, under Jackson, makes the defenses set out in TILA not available to GMAC. According to the plaintiffs' complaint, their counsel informed GMAC, just over a month after the assignment of the contract by Rizza to GMAC, that the plaintiffs had cancelled or rescinded the contract with Rizza because Rizza had failed to obtain financing within the contractually stipulated 15-day period. GMAC actually investigated this claim. Its internal investigation confirmed that the plaintiffs did have the right to cancel the contract under its 15-day financing requirement. Indeed, within this 15-day period GMAC had turned down financing of the plaintiff's purchase of the vehicle

6

from Rizza. The plaintiffs argue that GMAC had *actual knowledge* that this time limit for financing was not met. GMAC also learned that the plaintiffs were claiming that they had not understood that they were purchasing a van when they signed the purchase documents.

GMAC's employee who investigated the matter recommended that GMAC investigate further, suggesting that there were still question to be resolved, in spite of Rizza's assurances. One of the investigative documents in the record also has a notation recommending that GMAC not participate further in the agreement. That document, dated November 12, 2002, appears to be an e-mail from GMAC employee Gerald A. Barno, forwarded to several other GMAC employees. Barno had investigated this matter and had verified that the plaintiffs' agreement with Rizza did have a 15-day financing requirement. He also found instructions from Tony Rizza, apparently to Rizza employees, that the office should "cut a check for two payments and put the contract through." Barno also noted that the plaintiffs' down payment checks had been postdated. Written on the copy of the e-mail are instructions to "review attorney's letter to GMAC" and the recommendation "I think we should bow out [and] have Rizza FC our contact." This note appears to be from one of the internal GMAC recipients of the e-mail, Georgia A. Grummon, presumably, a GMAC employee.

A motion to dismiss brought under section 2-615 of the Code of Civil Procedure tests the legal sufficiency of the complaint. 735 ILCS 5/2-615 (West 2004). On review of an application of this rule, we examine this issue *de novo*. We must determine whether "the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted." Vitro v. Mihelcic, 209 Ill. 2d 76, 81, 806 N.E.2d 632, 634 (2004). In doing so, we must accept the plaintiffs' factual allegations as true, as well as

all reasonable inferences that can be drawn from those factual allegations. Vitro, 209 Ill. 2d at 81, 632 N.E.2d at 634. Furthermore, a complaint should not be dismissed unless the trial court concludes that there are no possible set of facts that could entitle the plaintiff to relief. Illinois Graphics Co. V. Nickum, 159 Ill. 2d 469, 483, 639 N.E.2d 1281, 1288-89 (1994). To establish a cause of action for fraud under the Consumer Fraud Act, the plaintiff must establish that a deceptive act in the course of trade or commerce was committed by the defendant, with the intent that the plaintiff rely on that deception. Connick v. Suzuki Motor Co., 174 Ill. 2d 482, 501, 675 N.E.2d 584, 593 (1996); Kindernay v. Hillsboro Area Hospital, 366 Ill. App. 3d 559, 575, 851 N.E.2d 866, 880 (2006).

We find that for purposes of the motion to dismiss, the plaintiffs have established a cause of action under this count of their complaint. There was ample evidence in the allegations of the complaint from which a court could find that GMAC had determined that the contract between plaintiffs and the dealer, Rizza, had been rescinded, was void, or had been fraudulently induced. If these allegations are proven at trial, then GMAC's actions in continuing to operate as if the contract was valid could be found to be deceptive and could be construed as intended to persuade the plaintiffs to rely on the deception. For all of these reasons we find that the plaintiffs' allegations in count II, together with the reasonable inferences to be drawn from those allegations, did state a cause of action under the Consumer Fraud Act, and therefore the trial court should not have dismissed that count.

In count III the plaintiffs seek to hold GMAC liable for the alleged fraudulent actions of Rizza pursuant to a notice that federal law requires to be placed in all retail contracts. That notice

states: "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof." 16 C.F.R. §433.2 (2004). But our supreme court has held that this provision is intended to permit creditors to seek recovery of funds paid on account. Jackson, 197 Ill. 2d at 55, 755 N.E.2d at 472. As we have noted, GMAC tendered to the plaintiffs the funds ($1,391.94) it had received from Rizza on the plaintiffs' account. When the plaintiffs refused this tender, their claim became moot. Hillenbrand v. Meyer Medical Group, S.C., 308 Ill. App. 3d 381, 389, 720 N.E.2d 287, 294 (1999). The plaintiffs also seek to recover the $4,000 they paid to Rizza, which they claim was a security deposit for their trial use of the van for the weekend. Thus by the plaintiffs' own account, this was a security deposit and not money paid on their sales contract account. Moreover, the plaintiffs do not allege that GMAC ever received the $4,000 from Rizza. Accordingly, the derivative claims of the plaintiffs in count III were properly dismissed by the trial court.

For all of these reasons, we affirm the judgment of the circuit court of Cook County dismissing with prejudice counts I and III of the fifth amended complaint, but we reverse the court's dismissal with prejudice of count II and remand for further proceedings.

Affirmed in part, reversed in part and remanded for further proceedings.

QUINN, P.J., and THEIS, J., concur.