In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 13-2313

GEORGE WIDMAR,

*Plaintiff-Appellant,*

*v.*

SUN CHEMICAL CORP., et al.,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11-C-1818 — **Harry D. Leinenweber**, *Judge.*

---

ARGUED DECEMBER 10, 2013— DECIDED NOVEMBER 19, 2014

---

Before MANION, ROVNER, and HAMILTON, *Circuit Judges.*

ROVNER, *Circuit Judge.* George Widmar worked for Rycoline Products, Inc. (which was acquired later by Sun Chemical Corporation) as a Plant Manager for sixteen years. Sun Chemical's National Manufacturing Manager, Keith Roberts, terminated Widmar's employment on November 18, 2009, claiming that the company was unsatisfied with Widmar's performance. Widmar alleges that Sun Chemical unlawfully terminated him because of his age, and then defamed him by

speaking ill of his work performance to others. The district court granted Sun Chemical's motion for summary judgment and we affirm.

## I.

Ordinarily we begin by reciting the facts in the light most favorable to the plaintiff. In this case, the parties present a mountain of competing facts. Generally, when the fact sections of the opposing briefs read like two unrelated stories, that is a clue for a court to look for material facts that require a trial to resolve. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). That certainly seemed to be the case here. Moreover, the plaintiff's contention that summary judgment was improper was based, in part, on language in the district court opinion which might be understood as taking facts in a light more favorable to the employer. For example, the district court stated that Widmar's declaration and deposition were "not only self-serving, but also irrelevant in establishing that age was a motivating factor in his termination." (R. 201, p.6). Self-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment. *See Hill v. Tangherlini*, 724 F.3d 965, 967-68 & n.1 (7th Cir. 2013); *Payne*, 337 F.3d at 773.[1]

---

[1] We remind district courts of our attempts to rid our circuit's opinions of language critical of the "self-serving affidavit:"

> We hope this discussion lays to rest the misconception that evidence presented in a "self-serving" affidavit is never sufficient to thwart a summary judgment motion. Provided that the evidence meets the usual requirements for evidence presented on summary judgment— including the requirements that it be based on personal knowledge and that it set forth specific facts showing

On the other hand, a plaintiff seeking to thwart summary judgment must comply with Federal Rule of Civil Procedure 56(e) and Federal Rule of Evidence 602, both of which require that testimony be based on personal knowledge. Personal knowledge can include reasonable inferences, but it does not include speculating as to an employer's state of mind, or other intuitions, hunches, or rumors. *Payne*, 337 F.3d at 772.

Moreover, "[a] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but … must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citations omitted). And, of course, any disputed facts must be material. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is

> that there is a genuine issue for trial—a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material facts.

*Id* at 773. *See also Hill v. Tangherlini*, 724 F.3d 965, 967-68 & n.1 (7th Cir. 2013) (noting that the term "self serving" must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment" and overruling all Seventh Circuit cases that suggest that a plaintiff may not rely on "self-serving" evidence to defeat summary judgment); *Rooni v. Biser*, 742 F.3d 737, 740 (7th Cir. 2014); *Navejar v. Iyiola,* 718 F.3d 692, 697 (7th Cir. 2013); *Berry v. Chicago Transit Auth.,* 618 F.3d 688, 691 (7th Cir. 2010); *Darchak v. City of Chicago Bd. of Educ.,* 580 F.3d 622, 631 (7th Cir. 2009); *Paz v. Wauconda Healthcare & Rehab. Ctr., LLC,* 464 F.3d 659, 664–65 (7th Cir. 2006); *Buie v. Quad/Graphics, Inc.,* 366 F.3d 496, 506 (7th Cir. 2004).

that there be no *genuine* issue of *material* fact." *Id.* (emphasis in original). Evidence supporting or opposing summary judgment must be admissible if offered at trial, except that affidavits, depositions, and other written forms of testimony can substitute for live testimony. *Malin v. Hospira, Inc.*, 762 F.3d 552, 554-55 (7th Cir. 2014).

Widmar's facts suffer from several of these deficiencies. For example, in Widmar's recitation of facts, he states, "Mr. Roberts blamed Widmar for many of the problems involving Rycoline products even when Mr. Roberts was aware that the problems were caused by others outside Mr. Widmar's department and outside of his control." (Widmar opening brief at p.5). The gist of his case is that Sun Chemical falsely blamed Widmar to cover up for the fact that it was firing him because of his age. To support this, he cites to his own deposition in which he testifies as follows:

> Although through the process of resolving the problems Mr. Roberts repeatedly learned that I was not at fault, he nevertheless blamed all of the problems on me in order to support his decision to terminate me. For example, in October of 2009, Mr. Roberts blamed me for inaccurate labels even though the Lab prepared the labels. At this time, he knew that Doug Gillam was responsible for, and controlled, the label instructions.

(R. 194-1 at p.3). He then goes on to list several more examples of times when a problem was caused by a different person or practice for which he was not in charge. As we will explore in further detail below, the fault with using this type of evidence is that it speculates as to the employer's state of

mind and attempts to substitute Widmar's judgment (and thus ours) for that of the employer. Neither type of evidence is sufficient to create a material dispute of fact that will defeat a claim of summary judgment. *See Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 737 (7th Cir. 2011) (employer's disagreement with employee's evaluation does not present a genuine issue of material fact). Because Widmar's legitimate facts were intermingled with improper inferences and speculation, we methodically examined the record to determine which facts met the undemanding requirements that we described above.

George Widmar, who was born in 1958, worked as a plant manager for Rycoline (later acquired by Sun Chemical) for sixteen years, beginning when he was 35 and terminating just before he turned 52. He oversaw the manufacturing process at two plants, one in Chicago, Illinois, and one in Adelanto, California. Sun Chemical manufactures and sells products used in the printing business such as fountain solutions, press washes, and coatings.

At the time Sun Chemical acquired Rycoline, on June 14, 2004, Widmar reported directly to Ed Toliopoulos (born in 1955). On November 18, 2008, the company assigned Keith Roberts (born in 1953), the national manufacturing manager, responsibility for managing the manufacture of all Rycoline products. Widmar began reporting to Roberts rather than Toliopoulos.

In 2009, Rycoline began experiencing problems with the quality of some products. Widmar maintains that some of the performance problems occurred because Rycoline changed its formulas to cut costs, purchased defective materials, and purchased the wrong testing materials which, in

turn, caused test results which appeared to indicate that materials were not up to standards when, in fact, they were.

Both parties agree that Roberts criticized Widmar and blamed him for the problems with Rycoline products. Widmar presented evidence at summary judgment based on his personal knowledge, including his own deposition testimony, affidavit, and the testimony and emails of others who worked for Rycoline, that the problems were not his fault. Sun Chemical's view, on the other hand, was that Widmar was a member of the Rycoline Leadership Team which was collectively responsible for identifying and solving product quality issues and that, even if he did not have direct responsibility for a particular area or task, Rycoline wanted a manager who could be proactive and work cooperatively with others to solve problems without simply denying responsibility. Sun Chemical's position is that Widmar did not meet its expectations in this regard.

Both briefs contain page after page of explanations about problems that arose at the plant and how those problems were addressed. Widmar's position is that the fact that he was blamed for problems for which he was not or could not be responsible demonstrates evidence of discrimination based on age. In the district court he argued that it was direct circumstantial evidence of discrimination. (R. 159, pp. 13-16). He does not appear to have a section of his brief dedicated to the direct method proof of discrimination on appeal, and it is unclear whether he still wishes to proceed with this method. But in any event, we will evaluate whether Widmar succeeds under that method of proof.

In short, for the purposes of summary judgment, we will assume that the problems identified were not, in fact, Wid-

mar's "fault" in the sense that he caused them or had direct control over them. We will discuss these individual incidents in the context of direct evidence and pretext as we proceed through the opinion.

A. *Direct evidence of discrimination.*

As we noted, it is difficult to discern whether Widmar is arguing on appeal that he can survive summary judgment under the direct method of proof, under which a plaintiff may demonstrate through direct or circumstantial evidence that the adverse action by the employer was motivated by an impermissible purpose. *Muhammad v. Caterpillar, Inc.*, 767 F.3d 694, 699 -700 (7th Cir. 2014); *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003). Because a plaintiff will rarely have actual evidence of discrimination, such as a written policy or an admission of impermissible animus, the direct method also allows a plaintiff to point to circumstantial evidence that is strong enough, taken as a whole, to allow the trier of fact to draw the inference of such animus. *Muhammad*, 767 F.3d at 699 -700; *Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013). "If the plaintiff can assemble from various scraps of circumstantial evidence enough to allow the trier of fact to conclude that it is more likely than not that discrimination lay behind the adverse action, then summary judgment for the defendant is not appropriate, and the plaintiff may prevail at trial even without producing any 'direct' proof." *Morgan*, 724 F.3d at 996.

There is one section of Widmar's opening brief in which he criticizes the district court for dismissing his evidence as "self-serving and irrelevant," but it is unclear whether he thinks this evidence is direct (or circumstantial) or indirect evidence of discrimination. All of his examples in that sec-

tion are descriptions of situations in which Roberts blamed
Widmar for various failings that Widmar demonstrates were
not his responsibility. For example, Widmar claims the fol-
lowing: The problems with the coating products were not a
problem at all, but rather the fault of faulty testing materials;
the failure to premix certain materials was the fault of the
laboratory which failed to include pre-mixing in its instruc-
tions; the problem with the fountain solutions was caused by
the purchasing department purchasing a flawed preliminary
material. He also claims that Roberts was simply incorrect
when he thought that Widmar was not complying with
quality assurance programs and that Widmar did not com-
municate well. We will discuss each of these incidents more
in the context of pretext. The problem for Widmar, however,
is that even if we take each and every one of these facts in
the light most favorable to him and even if we were to at-
tribute a nefarious motive to Roberts' conduct in each inci-
dent, we have no way of knowing whether Roberts acted
this way because of Widmar's age. Each and every one of
these issues could arise just as easily if Roberts simply did
not like Widmar's personality or his style or, for that matter,
his cologne. Title VII does not protect employees from poor
managers or unpleasant and unfair employers. Widmar has
not offered a speck of direct (and by this we also mean direct
or circumstantial) evidence of age discrimination and thus
his attempt to defeat summary judgment in this manner
fails. *See Good v. Univ. of Chicago Med. Ctr., Inc.*, 673 F.3d 670,
675 (7th Cir. 2012) ("guesswork and speculation are not
enough to avoid summary judgment."); *Langenbach v. Wal-
Mart Stores, Inc.*, 761 F.3d 792, 800 (7th Cir. 2014) (On sum-
mary judgment, evidence must point directly to the conclu-
sion that an employer was illegally motivated, without reli-

ance on speculation.); *Payne*, 337 F.3d 767 (describing cases where an employee's subjective belief that an employer took adverse employment action based on a protected category was insufficient to create an issue of material fact).

B. *Indirect Method.*

Widmar, however, can also survive a motion for summary judgment by demonstrating discrimination using the indirect method of proof first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this method, a plaintiff has the burden of establishing a prima facie case of discrimination by showing that: (1) he is a member of a protected class; (2) he met the employer's legitimate business expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably. *Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 809 (7th Cir. 2014). A similarly situated employee is one whose performance, qualifications, and conduct are comparable in all material respects. *Id.* If Widmar succeeds in establishing a prima facie case, the burden shifts to Sun Chemical to introduce a legitimate, nondiscriminatory reason for terminating him. *Id.* Widmar can then avoid summary judgment with evidence that Sun Chemical's stated reason was in fact pretextual. *Naficy v. Ill. Dept. of Human Servs.*, 697 F.3d 504, 511 -512 (7th Cir. 2012).

Because he was 51 and terminated, Widmar meets the first and third requirements. The district court did not analyze elements two and four but instead gave Widmar the benefit of the doubt and turned to an evaluation of pretext. A prima facie case, however, must be established and not merely incanted, and it is beneficial to our body of case law to address the elements of the prima facie case even if it

seems likely that a plaintiff will fail the pretext inquiry after burden shifting has occurred. *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 394 (7th Cir. 2010). More importantly, if a plaintiff is unable to establish a prima facie case of employment discrimination under the *McDonnell-Douglas* inquiry, an employer may not be subjected to a pretext inquiry. *Collins v. Am. Red Cross*, 715 F.3d 994, 1000 (7th Cir. 2013). In some cases, however, the issue of meeting legitimate job expectations and the question of pretext overlap. *Collins*, 715 F.3d at 1000; *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 477-78 (7th Cir. 2010). This is particularly true when the employer asserts as the nondiscriminatory reason for termination that an employee was not meeting legitimate job expectations. *Collins*, 715 F.3d at 1000; *Vaughn v. Vilsack*, 715 F.3d 1001, 1007 (7th Cir. 2013) (listing cases). The credibility of the employer's claim is at issue for both elements. *Id.*

This is just such a case, as Sun Chemical argues that Widmar failed to establish that he was meeting Sun Chemical's legitimate performance expectations and that his unsatisfactory performance was the basis for its legal, nondiscriminatory decision to terminate. Widmar claims that he was, in fact, meeting the legitimate performance expectations, and that it was, at the very least, a fact issue for a jury to decide.

Once again we note that Widmar spends the bulk of his brief describing the incidents when Roberts blamed him for failures that were not of his making or within his control. Sun Chemical spends the bulk of its brief describing these same incidents, noting how it believed Widmar's performance fell flat. We can summarize these arguments by noting that it is Sun Chemical's position that it is a legitimate business expectation that a plant manager be proactive, take

responsibility, keep supervisors informed, work collabora-
tively to solve problems and produce high quality products
for customers. In other words, Sun Chemical takes a "buck
stops here" approach in which it required its plant manager
to accept responsibility not just where he has direct control,
but rather over all aspects of the plant. It wanted Widmar to
seek out problem areas, even if they were the "fault" of oth-
ers and fix them. As support for this position, it offered its
own declared expectations and also Widmar's own admis-
sion that "the major purpose and objectives" of his position
as Plant Manager/Manufacturing Manager were to manage
"all activities related to manufacturing at [the Chicago and
Adelanto plants] and manag[e] all plant related activities at
[the Chicago Rycoline plant.]" (R. 192 at 6). Sun Chemical
also offered Widmar's own job summary which stated that
his duties included "continually develop[ing] and imple-
ment[ing] productivity and process improvements," and
that he was responsible for "decision making regarding Pro-
duction Planning, efficiencies and service decisions, … raw
material planning, … daily problem solving, [and] service to
customers" (R. 185-7, p. 65-66).

Widmar does not claim that the plant failings of which
Sun Chemical complained did not occur. As noted above, he
claims instead that he was errantly blamed for these short-
comings: it was the laboratory's responsibility to determine
the proper formulas and materials for products; it was the
purchasing department's responsibility to buy the appropri-
ate materials to be used to test the products; it was the man-
ufacturing department's responsibility only to follow the di-
rections of the laboratory. In sum, this is not a disagreement
about whether particular actions occurred, it is a disagree-
ment about the meaning of the word "fault" or, more pre-

cisely, what the scope of Widmar's responsibilities were and whether Widmar was meeting those expectations of his employer.

For summary judgment purposes, Widmar cannot create a factual dispute by stating that his job responsibilities ought to have been something other than what the company expected. We cannot say whether it was a reasonable expectation for Sun Chemical to require Widmar to be responsible for particular functions and actions in the plant in this way. This court has repeatedly stated that it is not a super-personnel department that second-guesses employer policies that are facially legitimate. "[I]t is not the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." *Harper v. C.R. England, Inc.*, 687 F.3d 297, 311 (7th Cir. 2012). A court cannot interfere because an employer's decision is unwise or unfair. *Silverman*, 637 F.3d at 738; *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 697 (7th Cir. 2006). It is not the province of the court to determine whether Sun Chemical's expectation that Widmar accept responsibility for the listed deficiencies was a fair, prudent, or reasonable expectation. So long as Sun Chemical was not using its managerial decision as a foil for a discriminatory purpose, we must respect that decision. If Widmar was not doing what Sun Chemical wanted him to do, then he was not meeting his employer's legitimate job expectations.

Of course, an employer's stated reason does not necessarily end the discussion. Unfair and unjustified ill-treatment can be a pretext for discrimination when the em-

ployer treats an employee unfairly because the employee belongs to a protected category. *Cung Hnin v. TOA (USA), LLC.*, 751 F.3d 499, 506 (7th Cir. 2014). An employer's poor management decisions could, in fact, be a cover for discriminatory action, but poor decisions can just as easily be the result of deficient management and lackluster business acumen. At this stage, once Sun Chemical has articulated a legitimate, nondiscriminatory reason for the termination, the burden toggles back to Widmar to demonstrate that these poor decisions—blaming him for things for which he was not at fault—were actually pretext for illegal discrimination. *Matthews v. Waukesha Cnty*, 759 F.3d 821, 827 (7th Cir. 2014). He can still defeat summary judgment by raising a genuine issue about the honesty, not the accuracy, of Sun Chemical's stated reasons for his termination. *Silverman*, 637 F.3d at 738. An employee can demonstrate that the employer's reasons are not credible through evidence showing that the proffered reasons had no basis in fact, were insufficient to motivate discharge, or did not actually motivate his discharge. *Id.*

To meet this burden, however, Widmar "must identify such weaknesses, implausibilities, inconsistencies, or contradictions in the defendant's proffered reasons that a reasonable person could find them unworthy of credence and hence infer that the defendant did not act for the asserted non-discriminatory reasons." *Bates v. City of Chicago,* 726 F.3d 951, 956 (7th Cir. 2013). The question is not whether Sun Chemical's assessment of Widmar's performance was correct, only that it was an honest belief and not a pretext for age discrimination. *Id.*

Widmar has provided nothing more than speculation that the blaming was a mask for discrimination. Even if Rob-

erts blamed Widmar for problems that he knew were not Widmar's fault, this makes Roberts a bad manager, not a perpetrator of illegal discrimination.

In many ways Widmar's brief on appeal gives support to Sun Chemical's complaints, as the oft repeated refrain of Widmar's brief is that he was not responsible for the various missteps at the plant. Although it is true that Widmar's abilities to correct failings were limited in many ways either by practical application (for example, when things were beyond his control) or by the nature of his job (for example, he claims that because he lacked a degree in chemistry he had no choice but to rely on the scientists in the laboratory for particular information and direction), if Sun Chemical's legitimate expectation was that a plant manager not pass the buck, then Widmar's brief in which he repeatedly denies responsibility gives further weight to the conclusion that Widmar was not meeting his employer's legitimate expectations.

For example, both parties spend significant time discussing an incident involving a water-based coating product that was not performing up to customers' expectations. According to Widmar's version of events, the lab created a formula for the manufacture of the product which the plant followed accordingly and which included instructions about which items needed to be pre-mixed. It did not include MGS1122 on the list of materials to be pre-mixed. In fall 2009, testing on samples indicated that the product made in Chicago did not meet quality specifications, while the product made in the Adelanto plant did. After investigation, the company determined that the Adelanto plant was pre-mixing MGS1122, as suggested by the manufacturer of MGS1122, and the Chi-

cago plant was not. In Chicago, workers were merely agitating the materials with a forklift as they transported the material. In the end, it turns out that the product was performing appropriately, but that the cards used for testing the product were faulty. Widmar claims that Roberts knew this but still blamed him for the problem.

As was the case before, this lengthy discussion does not create a material disagreement over facts. Roberts testified that he considered it the responsibility of the plant manager to ensure that all manufacturing procedures including pre-mixing were followed. Widmar does not dispute this, he merely claims that he was following the directions of the lab which did not include a pre-mix directive. Once again, this is a disagreement about the scope of Widmar's job responsibility which Sun Chemical is entitled to define. We need not determine whether it was wise or fair to place the blame on Widmar for following the laboratory instructions, only that Sun Chemical honestly expected him to do so.

Another example involves the purchasing of micron filter bags. Sun Chemical claims that Widmar failed to notify Roberts about the purchase of certain filter bags despite being asked to communicate all such actions to Roberts. Widmar claims he did not order the micron filter bags of his own volition, but rather, at the directive of the lab and thus Roberts could not complain about the purchase. Sun Chemical retorts that Roberts criticized Widmar not because he ordered the bags, but because he did so without informing Roberts prior to making the purchase as requested. The actual facts lie somewhere between the two positions. When the lab requested that the company change over to using a particular filter, Widmar purchased four filters for testing and cc'd

Roberts on an email stating that he "purchased 4 filters for testing. If the test works out we can make the change. Can I conclude that this change has been approved?" He then e-mailed several people, including Roberts, that the testing had been completed successfully and asked permission to move forward. In fact, it does appear that Widmar failed to inform Roberts before purchasing the four test filters, but did, however, communicate that the four test filters had been purchased (after the fact), that they had performed as required, and he then requested permission to move forward and replace the current filters with the new ones. It is true that were the court reviewing management decisions, it might determine that the criticism for failing to communicate about the purchase of a mere four test filters was petty and micro-managing, but this is not the task before a court. An employer can micro-manage and require as much petty communication as it wishes. And it may legitimately discipline an employee who fails to conform to the requirement so long as the discipline is not used as pretext for discrimination." A pretext for discrimination means more than an unusual act; it means something worse than a business error; pretext means deceit used to cover one's tracks." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 684 (7th Cir. 2000) (internal citations omitted). Being blamed unfairly is not evidence of deceit.

Widmar also claims that he was blamed for an ill-performing fountain solution, despite the fact that he submitted plenty of robust evidence that the problems with the solution occurred due to a faulty material rather than anything Widmar had done. We need not continue to chronicle each and every episode for which there was a problem at the plant where Roberts blamed Widmar. In each case the result

is the same. Widmar claims he is not at fault. Sun Chemical expected him to be more proactive and less finger-pointing in his approach to management and Widmar has failed to offer any evidence that these expectations were pretext for age discrimination.

Next, Widmar argues that evidence that employees outside his protected class were assigned his job responsibilities after he was terminated demonstrates that he meets the fourth prong of the burden shifting test—that similarly situated employees outside of his class were treated more favorably. This is the test used when evaluating whether employees subject to a reduction in force have been treated in a discriminatory manner. Widmar, however, was fired for poor performance, not as part of a reduction in force, so the real question to ask is whether younger, similarly situated managers at Sun Chemical who were not performing up to expectations were also terminated. *See Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 639 (7th Cir. 2008); *Pantoja v. American NTN Bearing Mfg. Corp.*, 495 F.3d 840, 847 (7th Cir. 2007). Widmar has offered no evidence of this whatsoever. He mentions in one sentence that he was not placed on a performance improvement plan even though it was company policy to do so if the problems were remediable, but again he offers not one shred of evidence that younger similarly situated employees were given such an opportunity where he was not.

Of course, hiring younger employees could demonstrate pretext, but in this case Widmar has also failed to present sufficient evidence of this. Sun Chemical denies that Widmar's duties were absorbed by any younger employees at all, but rather were taken on by Toliopoulos, three years older than Widmar, and Ralph Zarada, another manager who is

six years older than Widmar, with both of them delegating tasks to less senior employees. Widmar claims that the twenty-three-year-old Jose Sanchez assumed the bulk of the duties that he had performed in the twelve months prior to his termination, and that Angel Ruiz, who was thirty-nine at the time, assumed others. But even if this is true, Widmar also admits that all of the people who reported to him began reporting to Toliopoulos after he was fired, including Ruiz and Sanchez. (One employee who formerly reported to Widmar began reporting to Zarada.) He also admitted that Toliopoulos and Zarada reported directly to Roberts, just as he had. He does not deny that he had managerial duties and that these older employees assumed some of them. He now asserts that the bulk of his job was performing lower-level ministerial tasks that were absorbed by the younger non-management workers, Sanchez and Ruiz. But even if we take Widmar's facts as true, we can only conclude that some of his job duties were absorbed by employees who were older (tasks such as managing less senior employees) and some of his job duties were absorbed by employees who were younger (such as ministerial tasks). Thus even taking the facts in the light most favorable to Widmar (and we agree that it is a stretch that a plant manager/manufacturing manager who reported directly to the person overseeing all of manufacturing, purchasing, and the laboratory at the plant spent 90% of his time on ministerial matters), it is still true that Widmar's duties were re-delegated among two men who were significantly older than Widmar, and two men who were significantly younger. Consequently Widmar has not made a showing that such reassignment was a pretext for discrimination.

For this reason we determine that Widmar has not met his burden of establishing a prima facie case of age discrimination.

### C. *Severance claim*

Widmar makes a separate claim that Sun Chemical also discriminated against him by denying him severance pay. According to Widmar he was not paid the severance due under his contract even though Sun Chemical paid severance to four other employees who had been terminated for cause, including one substantially younger than Widmar. Widmar's cursory argument is devoid of any case law. His only claim is that four other employees terminated for cause received severance pay and one of those four was under the age of forty. Widmar has not established any direct evidence of discrimination on the severance claim. Nor has he shown any evidence under the indirect method other than stating that "a short term employee who was terminated for cause was under the age of 40" and received severance pay. This is insufficient to establish a claim of discrimination in severance pay.

### D. *Defamation*

Widmar's final claim is that after Sun Chemical terminated his employment, Charles Ramsey, a Rycoline manager, told some co-workers that Widmar had "made a change that screwed things up for the company." (Widmar's opening brief at 15). This statement, he alleges, was defamatory per se. This claim, however, was not raised below. In the district court, Widmar alleged that Ramsey had defamed him by telling others that he had "intentionally sabotaged Sun Chemical." Intentional sabotage is of a completely different

nature than "screwing things up." The latter includes negligence, minor errors, and perhaps even taking a reasonable business risk that does not pan out. A plaintiff may not change theories on appeal and deny the defendant the opportunity to develop a defense to the new theory. *Charleston v. Bd. of Trs. of Univ. of Ill. at Chicago*, 741 F.3d 769, 774 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 2719 (2014). Under Illinois law, a cause of action for defamation must set forth the statements about which the plaintiff complains with specificity so that a court can determine whether the statements give rise to a cause of action. *Green v. Rogers*, 917 N.E.2d 478 (Ill. 2009). Because truth is a defense to a defamation claim (*Hnilica v. Rizza Chevrolet, Inc.*, 893 N.E.2d 928, 931 (Ill. App. Ct. 2008)), a defendant must have the opportunity to know which statement he is accused of making.

Nevertheless, even if the claim is not waived, it fails. Widmar makes his claim under the Illinois law of defamation where words are considered defamatory per se if, among other reasons, they impute inability to perform or want of integrity in the discharge of duties of office or employment. *Green*, 917 N.E.2d at 492. To be defamatory per se, the challenged statement must be so obviously and naturally harmful to the person to whom it refers that a showing of special damages is unnecessary. *Vicars-Duncan v. Tactikos*, 16 N.E.3d 935, 943 (Ill. App. Ct. 2014). Recovery will not be allowed if the statement can reasonably be given an innocent construction. *Tuite v. Corbitt*, 224 Ill.2d 490, 502 (Ill. 2006). Stating that Widmar "had made a change that screwed things up for the company" says nothing about his ability to perform in his position in general—only that he had made a particular error at Sun Chemical. This type of comment is not defamation per se. *See Green*, 917 N.E.2d at 556.

For all of these reasons, the judgment of the district court granting summary judgment to Sun Chemical is AFFIRMED.