NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted June 1, 2015[*]
Decided June 10, 2015

Before

JOEL M. FLAUM, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

| | |
|---|---|
| No. 14-3718 | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| DEBORAH WALTON, *Plaintiff-Appellant,* | |
| *v.* | |
| BANK OF AMERICA CORPORATION and BANK OF AMERICA, N.A., *Defendants-Appellees.* | No. 1:11-cv-00685-SEB-DML Sarah Evans Barker, *Judge.* |

**Order**

One part of the Real Estate Settlement Procedures Act requires servicers of home loans to respond to borrowers' requests for information, explanation, and correction. 12 U.S.C. §2605(e). The Act refers to "qualified written requests," which we abbreviate to "requests." When this suit began, Deborah Walton advanced several claims against Bank of America and affiliated firms (collectively "the Bank"), but all have been re-

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. See Fed. R. App. P. 34(a); Cir. R. 34(f).

solved or abandoned except for her contention under the Act that the Bank failed to respond to two requests she made, one in May 2010 and the other that November. The district court granted summary judgment in the Bank's favor. 2014 U.S. Dist. LEXIS 42599 (S.D. Ind. Mar. 28, 2014).

Walton borrowed from the Bank to finance two parcels of real estate. She paid the real estate taxes without the need for an escrow account. In October 2009 the Bank (without explanation) increased Walton's minimum monthly payments. Six months later, after Walton protested, the Bank told her that she had fallen roughly $35,000 behind in taxes, which the Bank had paid on her behalf and was now collecting on top of the principal and interest. (Contracts allowed the Bank to pay any taxes or other charges that might come ahead of the Bank's security interests. It is not clear whether the $35,000 the Bank sought to collect represent taxes or other items, because as we explain later the Bank has not adequately responded to Walton's requests.)

In response to Walton's protest, the Bank undertook to collect the money in 60 monthly installments rather than 12, as it initially had proposed. The Bank told Walton that she must remit $2,635 a month; her monthly principal and interest had been $2,071. Walton did not accept the Bank's calculation and started sending monthly checks for $2,182.55, which the Bank accepted through September 2010. The next month, however, the Bank began to reject her tenders, informing her that the payments would not bring the loan current and were defective for the additional reason that they did not allocate the money between the two loans. That fall the Bank commenced a foreclosure action in state court with respect to one of the properties. Since December 2010 Walton has not made any payments at all, and the Bank has reported her to credit agencies.

Walton contends (and the record shows) that the Bank acknowledged receipt of the May 2010 request; according to Walton, the Bank never supplied any information and did not correct the records as she requested. She made a second request in November 2010 (its caption was "SECOND REQUEST"), and again the Bank acknowledged receipt and promised a response. But according to Walton's affidavit, no response was forthcoming. The Bank does not contend that it responded substantively to the May 2010 request, but it maintains that it did respond to the November 2010 request. It filed with the district court a letter, on a law firm's stationery, dated February 2, 2011. Walton's affidavit swears that she had not seen such a letter until it was produced in this litigation—and she also maintains that it is substantively inadequate. Some of Walton's more recent filings are difficult to reconcile with the affidavit of non-receipt; for the purpose of summary judgment, however, we must take the record in the light most favorable to Walton and assume that she stands by the affidavit of non-receipt.

In granting summary judgment against Walton, the district court made three principal rulings: first, that the May 2010 request must be ignored because it is neither mentioned in nor attached to the complaint; second, that the February 2011 letter adequately dealt with the November 2010 request; and third, that in any event Walton had not suffered any compensable damages. We do not agree with these rulings.

The district court did not identify any rule requiring a plaintiff to mention all requests by date or to attach all of them to a complaint. The Rules of Civil Procedure establish a claim-pleading system, not a fact-pleading system. See, e.g., *Erickson v. Pardus*, 551 U.S. 89 (2007). Walton's complaint alleges that she made, and the Bank ignored, a request for information and correction. The number of requests a customer makes is not essential to a plausible claim—and Fed. R. Civ. P. 8 requires no more than plausibility. See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Details such as how many requests were made, and the dates they bore, are the province of discovery and litigation-control orders such as those under Fed. Civ. P. 12(e) (more definite statement) or 16(b) (scheduling order). Walton alerted the Bank in discovery to her two requests—and the Bank has never claimed ignorance or confusion about the nature of Walton's claims. Nor could it. After all, the Bank acknowledged the May 2010 request soon after receiving it, and the November 2010 request was captioned "SECOND REQUEST." Even without the latitude allowed to pro se plaintiffs such as Walton, this was enough to alert the Bank that it needed to show compliant responses to each of two requests.

The Bank does not contend that it provided a complying response to the May 2010 request. It maintains that it satisfied the November 2010 request, but its evidence falls short in two respects: first, the record does not show that the letter dated February 2, 2011, was sent to Walton; second, that letter is inadequate even if sent and received.

The Bank did not submit an affidavit from the law firm explaining how the letter was dispatched to Walton (if indeed it was sent); instead the letter came with a declaration by a bank official who did not supply any information, based on either personal knowledge or details about how the Bank maintains its records, tending to show that the letter had been sent. Because the record does not show that the letter was sent, it is unnecessary to decide whether the Act is satisfied by a response that is lost in transit. The Act says that the servicer "shall provide" certain information, 12 U.S.C. §2605(e); we cannot find any decision or regulation addressing the question whether the word "provide" is satisfied by mailing a response that goes awry. (The question is not whether mailing creates a presumption of receipt, which it does; the question is whether receipt is necessary at all.) Since the record does not show mailing or other delivery, the issue need not be pinned down. What's more, if receipt is essential, the record does not allow summary judgment for the additional reason that Walton has sworn that she did

not receive the February 2011 letter. The Bank denigrates Walton's affidavit as "self-serving," but that is irrelevant. It is based on personal knowledge, and the fact that Walton is an interested party no more allows her affidavit to be ignored than it would allow the Bank's evidence to be ignored. See, e.g., *Widmar v. Sun Chemical Corp.*, 772 F.3d 457, 459–60 (7th Cir. 2014); *Hill v. Tangherlini*, 724 F.3d 965, 967–68 & n.1 (7th Cir. 2013).

Even if sent and received, the February 2011 letter still would not support the Bank's position, because it does not tell Walton how the Bank came to the conclusion that she owed an extra $35,000. The letter and a declaration from one of the Bank's vice presidents assert that the Bank had received a "notice" from a tax assessor about unpaid taxes, but neither the law firm nor the Bank itself sent Walton a copy of this notice or any bill from any jurisdiction. Nor did the Bank show that it has paid $35,000 (or any other sum) to the assessor. The Act is not satisfied by generalities; to comply with a request, a mortgage servicer must provide *information* and not just its own say-so. Walton denies that she owed the extra $35,000; if it wanted to collect, the Bank had to show that a valid bill for items that could trump its security interest was received and paid. (Walton asked for a full escrow statement and did not specify other documents explicitly, but the request for an accounting (coupled with her dispute of the Bank's claim about the amount due) implies a request for information about the sums the Bank sought to collect. The law firm's letter omitted even a full escrow analysis, however, asserting that the Bank had discarded the annual statement required by 12 U.S.C. §2609(c); it told Walton that she should look the information up herself on the Bank's web site.)

As for damages: If the Bank's claim to $35,000 is unsupported, as Walton asserts, then all the late fees the Bank has assessed (or collected from Walton's monthly checks), and any fees (including attorneys' fees) Walton has incurred in the foreclosure litigation, could in principle be awarded as damages. The district court thought that because some of these fees predated the November 2010 request, Walton had failed to show loss. But many of these charges post-date the May 2010 request. And it is not clear what to make of other losses Walton may have incurred. If the Bank had provided timely and adequate information, would Walton have continued to make payments after December 2010? Would the information have led the Bank to conclude that Walton's monthly payments of $2,182.55 were adequate? Would the Bank have refrained from reporting delinquencies that (Walton maintains) damaged her in other ways, such as causing her to bear more onerous terms to purchase other parcels? The Act authorizes "actual damages," 12 U.S.C. §2605(f)(1)(A), a phrase that implies compensation for any loss proximately caused by a violation. It also authorizes additional damages of up to $2,000 for a "pattern" of violations, §2605(f)(1)(B), and a judge might find a pattern in the Bank's failure to respond adequately (or at all) to Walton's two letters. She may or may not be

able to prove quantifiable loss, but the record does not permit an adverse decision on summary judgment.

The judgment with respect to claims resting on the Act is vacated, and the case is remanded for proceedings consistent with this order. Walton has abandoned her other claims, so the judgment otherwise is affirmed.